491 So.2d 436 (1986)
Richard RATCLIFF
v.
TOWN OF MANDEVILLE.
No. 85 CA 0589.
Court of Appeal of Louisiana, First Circuit.
June 24, 1986.
Writ Granted October 10, 1986.
M.J. Le Gardeur, Jr., Covington, for plaintiff, appellant.
Iddo Pittman, Jr., Hamond, for defendant, appellee.
*437 Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Plaintiff, Richard Ratcliff, appeals from a judgment granting a motion for summary judgment in favor of defendant, Town of Mandeville.
This matter deals solely with the interpretation and application of LSA-R.S. 9:2791 and 9:2795[1] which limits the liability of landowners who make their property available for certain recreational purposes.
The facts, which are not in dispute, are as follows. During the early morning hours on June 20, 1983, plaintiff and his son returned to the boat dock following a night of shrimping. The dock, which is located in and owned by the Town of Mandeville, is a single platform loading and unloading dock abutting a concrete boat launching ramp which extends into the navigable waters of Lake Pontchartrain. After loading his boat onto the trailer, plaintiff began to leave the dock when he placed his foot on the downramp, slipped and broke his hip.
*438 Plaintiff alleges that the dock's defective design and construction caused him to lose his footing. After answering the petition, defendant filed a motion for summary judgment contending that it was immune to suit by virtue of LSA-R.S. 9:2791 and 2795. From a judgment granting defendant's motion, plaintiff appeals asserting the following assignments of error:
1. The trial court erred in granting summary judgment as a matter of law under the facts and circumstances of this case.
2. The trial court erred in holding La. R.S. 9:2791 and 2795 applicable to defendant, a political subdivision.
3. The trial court erred in upholding the constitutionality of R.S. 9:2791 and 2795.

ASSIGNMENT OF ERROR NO. 1
In support of this assignment, plaintiff relies entirely upon the case of Keelen v. State Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985). Therein, the Supreme Court reversed a summary judgment granted in a case involving a drowning in a swimming pool at Fountainbleu State Park. In reaching its decision, the court set forth a two-part test which must be met in order for the statutes limiting liability to be applicable. First, the locale must be categorized as an undeveloped, non-residential rural or semi-rural area. Second, the injury causing condition or instrumentality must be of the type normally encountered in the true outdoors.
It is plaintiff's contention that the dock in question fails to meet either part of the above stated test. First he contends that the dock was located in the Town of Mandeville at Municipal Yacht Harbor and therefore, not in an undeveloped, non-residential rural or semi-rural area. Secondly, that the harbor was not kept in a natural, open and environmentally wholesome state as would be encountered in the true outdoors.
We find no merit to plaintiff's contentions. As set forth in Keelen, supra:
The statement of purpose of La.R.S. 9:2795 is contained in 1975 La.Acts, No. 615, § 1 and provides:
"The purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." (Emphasis ours).
Thus, it is clear that the statutes are not limited in their application to areas of land, but apply equally to bodies of water. With this fact in mind, we apply the facts of the present case to the test set forth in Keelen, supra.
Addressing the instrumentality test, we note that the term "premises" as defined in LSA-R.S. 9:2791 and 2795 includes buildings, structures, machinery or equipment thereon. Clearly a boat dock or launch would come under the definition of a structure. Additionally, it is obvious that the purpose of such a structure is to provide ingress and egress for vessels to the many waterways found within the state. By making water areas more available for public recreational purposes, these docks and launches fall within the stated purpose of the statutes, and their construction and maintenance should be encouraged. Furthermore, absent such structures, access and availability to water areas would be greatly diminished, for in order for boaters to reach and enjoy water areas, a proper launching facility is required. For these reasons we find that a boat dock or launch is a structure that one would generally expect to encounter in the true outdoors and falls under the purview of the statutes.
As to the locale test, we agree with plaintiff that the Town of Mandeville could not be classified as an undeveloped, non-residential rural or semi-rural area. However, we find that the area in question is not the Town of Mandeville, but rather Lake Pontchartrain. While it is true that the dock was located near the edge of the town, it was there to provide access to the Lake. The purpose of the dock was to serve as a gateway or entrance to a body *439 of water that by no stretch of the imagination could be considered as developed or residential. To say that the Town of Mandeville would have to relocate the dock a sufficient distance from the town in order to be considered in the proper rural locale would not only be ludicrous, it would fly directly in the face of the statutes' stated purpose. The undesirable result would be to discourage rather than encourage recreational water activities on Lake Pontchartrain.
As the purpose of these statutes was to encourage the opening of these lands and water for recreational purposes, we hold that the dock in question falls under the statute regardless of the fact it is located in the town.[2]

ASSIGNMENTS OF ERROR NOS. 2 and 3
By these assignments of error, plaintiff contends that if LSA-R.S. 9:2791 and 2795 are construed to apply to political subdivisions of the state, then these statutes are unconstitutional since they grant immunity in violation of Article 12 § 10 of the Louisiana Constitution of 1974.[3]
In his reasons for judgment, the trial judge found Pratt v. State, 408 So.2d 336 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1098 (La.1982), to be dispositive of these issues. Therein he stated:
The third circuit held that the constitutional prohibition against sovereign immunity did not require imposing liability on the state and parish, since statutory immunity for recreational uses was available to any landowner. Since the City of Mandeville is a subdivision of the state, it is included in the ruling. Accordingly, the court declares that R.S. 9:2791 and 2795, as they apply to this case, are not in violation of the Constitution of Louisiana.
We agree with the findings of the trial judge. The term owner as defined by LSA-R.S. 9:2795 includes the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises. Clearly by these terms the state or a subdivision thereof would meet the definition of an owner. The Third Circuit reached the same conclusion under similar circumstances in Pratt, supra, at 342. Therein, the Third Circuit adopted the following language from the trial court's reasons for judgment:
Plaintiffs have argued that such a grant of immunity to the state or its political subdivisions would be contrary to the prohibition against sovereign immunity contained in Article 12, Section 10, of the Louisiana Constitution of 1974. This argument is without merit. [LSA-R.S.] 9:2795 is not designed to re-establish immunity on the basis of a sovereign status.
By its terms, the grant of immunity is made to any landowner who has made his land available for certain recreational purposes. The State, for the purposes of the statute, stands in the same position as would any other private litigant.
We adopt this reasoning and hold that the trial court was correct in finding that the Town of Mandeville was an owner entitled to the protection afforded by the statutes. See also Rushing v. State, Through Louisiana Health and Human Resources Administration, 381 So.2d 1250 (La.App. 1st Cir.1980).
Accordingly, for the above and foregoing reasons, the judgment of the trial court maintaining the motion for summary judgment in favor of defendant, Town of *440 Mandeville, and dismissing plaintiff's, Richard Ratcliff's, demands is hereby affirmed. Costs of this appeal are to be borne by plaintiff-appellant.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:2791 provides:

Liability of owner or occupant of property not used primarily for commercial recreational purposes
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon. Acts 1964, No. 248, §§ 1-3.
LSA-R.S. 9:2795 provides:
Limitation of liability of landowner of property used primarily for recreational purposes
A. As used in this Section:
(1) "Land" means land, roads water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care. Acts 1975, No. 615, §§ 2-5
[2] We are aware of the recent Supreme Court decision on this matter in Landry v. Board of Levee Commissioners of Orleans Levee District, 477 So.2d 672 (La.1985). However, due to the specific facts of the instant case, we do not find Landry to be controlling in this matter. See Van Pelt v. Morgan City Power Boat Association, Inc, et al, 489 So.2d 1346 (La.App. 1st Cir. May 28, 1986).
[3] Article 12 § 10(A) of the Louisiana Constitution of 1974 provides:

No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.