525 So.2d 55 (1988)
Ricky Paul ADAMS, Plaintiff-Appellant,
v.
STATE of Louisiana, et al., Defendants-Appellees.
No. 86-1306.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
J. Wendel Fusilier, Ville Platte, for plaintiff-appellant.
Wilson & Walker, Lon Wilson, Alexandria, Guy O. Mitchell, Ville Platte, for defendants-appellees.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOUCET, Judge.
Plaintiff, Ricky Paul Adams, appeals from summary judgments rendered in favor of defendants, Rapides Parish Police Jury and the State of Louisiana, through the Department of Wildlife and Fisheries for the Department of Public Works, dismissing his suit for damages incurred as a result of personal injuries sustained in a diving accident. We affirm.
*56 On August 18, 1982, plaintiff, along with his father, sister and her friend, traveled to a section of a rural recreational area known as the Cocodrie Lake Game & Fish Preserve. The area in question was located at the Evangeline and Rapides Parish boundary where U.S. Highway 167 crosses Bayou Cocodrie. A blacktop road led from Highway 167 down to a parking lot and boat launch. Nearby was a dam and water control structure, and a diversion canal. A small residential community, Clearwater Community, was also located nearby. As Mr. Adams was preparing to fish, plaintiff and the two girls proceeded over to a willow tree located on the banks of the canal. Children who would swim at this particular spot during the summer had nailed wooden boards to the trunk of the tree forming ladder-type steps leading to a homemade diving platform in the tree. Plaintiff, who was then seventeen years old, climbed up to the platform and dove into the canal, striking his head on the waterbottom and breaking his neck. As a result of the accident plaintiff was left a quadraplegic.
Plaintiff filed suit against the defendants-appellees as well as the fee title owner of the property on which the accident occurred, Richard Odom. It was alleged that defendants-appellees exercised varying degrees of control over the land area in question. All three defendants filed motions for summary judgments based in part on the grounds that they were immune from liability under La.R.S. 9:2791 and/or 9:2795. The record does not reflect the trial court's disposition of Mr. Odom's motion and, in any case, that matter is not before us. The trial court apparently found that the Rapides Parish Police Jury and the Department of Wildlife and Fisheries through the Department of Public Works were immune from liability under R.S. 9:2791 and/or 9:2795 and rendered judgment accordingly. On appeal plaintiff claims the trial court erred in reaching this result.
As the area in question is used for recreational purposes we will limit our review to an examination of the applicability of R.S. 9:2795 to the facts of this case. R.S. 9:2795, as in effect at the time of plaintiffs accident, reads as follows:
"A. As used in this Section:
(1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price or fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the *57 land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."
Plaintiff first argues that R.S. 9:2795 does not apply to the State and its political subdivisions but only to private landowners. Although the Louisiana Supreme Court has so far not ruled on this issue, four Louisiana Circuit Courts of Appeal, including this one, have afforded the State and its political subdivisions immunity under R.S. 9:2791 and/or 9:2795. See LaCroix v. State, Through the Department of Transportation and Development, 477 So.2d 1246 (La.App. 3rd Cir. 1985), writ denied, 478 So.2d 1237 (La. 1985); Thomas v. Jeane, 411 So.2d 744 (La.App. 3rd Cir.1982); Pratt v. State, 408 So.2d 336 (La.App. 3rd Cir.1982), writ denied, 412 So.2d 1098 (La.1982); Stuart v. City of Morgan City, 504 So.2d 934 (La. App. 1st Cir.1987); Landry v. State, 466 So.2d 758 (La.App. 4th Cir.1985), reversed on other grounds, 477 So.2d 672 (La.1985); Rodrigue v. Fireman's Fund Insurance Co., 449 So.2d 1042 (La.App. 5th Cir.1984). In view of this established jurisprudence we find no merit to plaintiffs argument that 9:2795 does not apply to land owned or controlled by the State or its political subdivisions.
The Louisiana Supreme Court examined R.S. 9:2795 in Keelen v. State, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985). The court concluded that in enacting the statute "the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural." The court further stated that:
"The existence of some improvements on relatively undeveloped rural or semirural property does not change the character of the land so as to deprive its owner of the immunity granted by the statutes. Improvements such as shelters, toilet facilities, fireplaces, etc. are merely conveniences incidental to the use of the land for enumerated recreational activities and do not of themselves take property out of a rural, undeveloped classification. This view is reinforced by the fact that the definitions of `premises' in La.R.S. 9:2791 and of `land' in La.R.S. 9:2795 include `buildings, structures and machinery.'
Examination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation. The injurycausing condition or instrumentality must also be scrutinized. Again, reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the `true outdoors.' When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection."
It is not disputed by plaintiff that the area where the accident occurred is an undeveloped non-residential rural or semi-rural land area as contemplated by 9:2795 as interpreted by the Supreme Court in Keelen. Neither does plaintiff contend that there was any willful or malicious failure by the defendants to warn against diving into the shallow water near the bank of the canal.
Plaintiff instead argues that the homemade diving platform, which he cites as the injury-causing instrumentality, is not of the type normally encountered in the true outdoors but rather, such an instrumentality is of the type usually found in someone's backyard. Therefore, plaintiff argues, as in Keelen, R.S. 9:2795 does not provide defendants immunity from liability. Defendants argue that the actual injury-causing instrumentality or condition in this case *58 was the canal itselfnot the diving platform and that the canal is unquestionably the type of instrumentality or condition covered by the statute as interpreted by the Keelen court. While on the surface defendants' contention may appear to have some merit, we cannot sever consideration of the diving platform from the canal into which plaintiff dove. They must be examined together.
In Keelen, the injury-causing instrumentality was a swimming pool in which plaintiff's eight-year-old son drowned. The pool was located on the grounds of a state park. A swimming pool is not normally found in the "true outdoors." However, the homemade diving platform in this case, situated in a tree on the banks of a canal in a state game and fish preserve is far different from the swimming pool in Keelen. The state of Louisiana is laced with waterways and water bodies providing its citizens with ample opportunity to engage in recreational activities such as swimming. It is not uncommon to see crude structures such as the diving platform in this case, or simply boards nailed to a tree providing access to an elevated position in the tree from which to dive or swing from a rope into the water below. The summer hours of countless youths are filled with such water activities. Unfortunately, the inherent dangers of diving into untested waters are evidenced by the significant number of cases in which, tragically, participants such as the plaintiff suffer permanently debilitating spinal cord injuries.
La.R.S. 9:2795 specifically includes swimming as a recreational activity for which a landowner, other than an owner of a commercial recreational development, is provided immunity from liability for injury suffered by any person permitted to use the land for recreational purposes. We feel the legislature, by enacting 9:2795, fully intended to cover factual situations such as the one in the case at bar. We find no merit to plaintiff's argument to the contrary.
Plaintiff next contends that the facts of this case make the attractive nuisance doctrine applicable and that the enactment of R.S. 9:2791 and 9:2795 did not abolish this doctrine. It is not necessary to examine in detail the attractive nuisance doctrine since one of its basic precepts is that the injured person must be a child of tender years, too young and immature to appreciate and avoid the danger of the injury-causing condition or instrumentality. Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791 (1949); Cates v. Beauregard Electric Cooperative, Inc., 316 So.2d 907 (La.App. 3rd Cir.1975), affirmed, 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); Butler v. City of Bogalusa, 258 So.2d 599 (La.App. 1st Cir.1972), writ denied, 261 La. 544, 260 So.2d 323 (La.1972); Tooraen v. New Orleans Public Service, Inc., 243 So.2d 312 (La.App. 4th Cir.1971).
The plaintiff, Ricky Paul Adams, was seventeen years old at the time of the accident. Normally, a person this age would be unable to avail himself of the attractive nuisance doctrine. In this case there appears to be some question as to plaintiffs mental competence which, it is claimed, brings him within the scope of the doctrine. However, 9:2795 A(5) appears to render irrelevant any consideration of the age of the injured person. Section A(5) defines "person" as used in the statute to mean "individuals regardless of age." The inclusion of this definition in the statute leaves us with the inescapable conclusion that in so defining "person" the legislature did in fact intend to abrogate the attractive nuisance doctrine in those cases otherwise covered by 9:2795. The immunity from liability afforded the landowner covers injuries to persons regardless of their age. The wording of the statute in this respect is clear and unambiguous and leaves no room for interpretation. We therefore find no merit to plaintiffs argument that the attractive nuisance doctrine should apply to the facts of this case.
In conclusion, we find that the pleadings, depositions, and affidavits contained in the record show that there is no genuine issue as to material fact and that the defendantsappellees were entitled to judgment as a matter of law.
*59 For the reasons assigned the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.